Karnes v. Alexander.

KARNES, *Appellant*, v. ALEXANDER.

1. **Ejectment:** SHERIFF'S DEED: JUDGMENT OF JUSTICE: JURISDICTION: EXECUTION. Plaintiff brought ejectment to recover possession of real estate in the City of Kansas. On the trial, defendant offered in evidence a sheriff's deed, made under a sale by virtue of an execution issued on a judgment of a justice of the peace. The execution recited that the judgment was for $37.64, and was rendered by a justice of the peace for Kaw township, Jackson county, on a special tax bill against real estate in the City of Kansas, mentioned in the execution. The charter of said city gives jurisdiction to justices of the peace thereof, of suits on special tax bills, when the amount sued for does not exceed three hundred dollars. *Held*, that, as it was admitted on the trial that the proceedings before the justice showed that the justice who rendered the judgment was a justice of the peace of the City of Kansas, the judgment

Karnes v. Alexander.

was not subject to collateral attack, and the sheriff's deed, under it, was effectual to convey title to the premises in controversy.

2. **Execution, When Can be Executed.** A sheriff can execute a writ of execution, returnable to the next term of court, at any time during the term.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

*R. H. Field* for appellant.

(1) It does not appear upon the face of either of the executions, nor in the sheriff's deed, that a transcript of the justice's judgment was filed, indexed, and recorded, in the office of the clerk of the Kansas City circuit court, as required by the city charter. *Kentzer v. Railroad*, 47 Mo. 641 ; *Carr v. Youse*, 39 Mo. 346. (2) The executions are void because they fail to show that the justice of the peace of Kaw township, who rendered the judgment recited, was a justice in the City of Kansas. City Charter, art. 8, sec. 4; Laws, 1875, p. 253 ; *Hessey v. Heitkamp*, 9 Mo. App. 36 ; *Colville v. Nealy*, 2 Swan [Tenn.] 89. (3) It should affirmatively appear that the justice was an officer of the city. *Cunningham v. Railroad*, 61 Mo. 33 ; *State v. Swope*, 72 Mo. 399 ; *State v. Metzger*, 26 Mo. 65 ; *Schell v. Leland*, 45 Mo. 290 ; *Ewing v. Donnelly*, 20 Mo. App. 6. An inevitable presumption arises against the jurisdiction of the justice, when said fact does not appear. (4) And the same presumptions are to be indulged against process issued on the judgments or proceedings before them, whereon the process is silent. *Hall v. Howe*, 10 Conn. 514 ; *Moore v. Lynch*, 4 Baxter, 287 ; *Gibbs v. Bourland*, 6 Yerg. 481. (5) Nothing having been done under the executions, such as levying upon the property, or causing the same to be advertised

for sale, nor by doing any other act in execution of such process until more than two weeks after the return day thereof; they were, therefore, dead writs on the day of the sheriff's sale; hence, it was a nullity on this ground, if it were not for reasons *ante.* Freeman on Ex., sec. 106; *Bank v. Bray,* 37 Mo. 194; *McDonald v. Grovefield,* 45 Mo. 28; *City of Jefferson v. Curry,* 71 Mo. 85; *Mitchell v. Ireland,* 54 Tex. 301; *Barrett v. McKenzie,* 24 Minn. 20; *Knox v. Randall,* 24 Minn. 479; *West v. Shockley,* 4 Harr. [Del.] 287; *Bernard v. Stevens,* 2 Aiken [Vt.] 429; *Dode v. McKinnie,* 4 Hawks [L. and Eq.] 219. Return day, as used in our statutes, and as understood and spoken of by the courts of this state, does not mean the whole term of the court to which an execution is returnable, but it necessarily means, and is understood to mean, the first day of the term, if any particular day thereof. 3 Blacks. Com. 278; *Bank v. Tome,* 2 Spear's Law [S. C.] 501; *State v. Commissioners,* 37 N. J. L. 394; *Browning v. Jones,* 4 Humph. [Tenn.] 69; *Cash v. Tozer,* 1 W. & S. [Pa.] 519, 526.

*C. O. Tichenor* for respondent.

(1) The entry of a judgment by a justice of the peace is a ministerial act. Courts overlook the matter of form, and regard proceedings before a justice according to the merits. The entry of a verdict by a justice on his docket has been held a good judgment. *Morse v. Brownfield,* 27 Mo. 224; *Stemmons v. Carey,* 57 Mo. 222; *Lynch v. Kelly,* 41 Cal. 232. (2) Justices are not required to state anything in their entries not called for by the statutes. *Simonton v. Hays,* 88 Ind. 72; *Hagerman v. Weitzel,* 15 Kas. 387; *Coffee v. City,* 36 Wis. 121; *Brown v. Pearson,* 8 Mo. 159. The service of process in the county makes a *prima facie* case of jurisdiction. *Bacon v. Basset,* 19 Wis. 48. (3) Presumptions are allowed to sustain the judgments of justices of the peace.

*Crowley v. Wallace,* 12 Mo. 147 ; *Franse v. Owens,* 25 Mo. 334; *Waddell v. Williams,* 50 Mo. 222 ; *Baker v. Baker,* 70 Mo. 136 ; *Fulkerson v. Davenport,* 70 Mo. 545; *Coffee v. City,* 36 Wis. 124; *Roach v. Company,* 71 Mo. 398 ; *Colvin v. Six,* 79 Mo. 200 ; *State ex rel. v. Six,* 80 Mo. 62. (4) Where the judgment of a justice is silent as to a matter, facts may be shown *aliunde,* at least as to that which the statute does not require to be stated therein, in aid of the judgment. *Jolly v. Foltz,* 34 Cal. 321 ; *Van Duzen v. Sweet,* 51 N. Y. 381 ; *Crowley v. Wallace,* 12 Mo. 147 ; *Garnett v. Stacey,* 17 Mo. 601; *Franse v. Owens,* 25 Mo. 334; *Elliott v. Black,* 45 Mo. 372; *Baker v. Baker,* 70 Mo. 136 ; *Fulkerson v. Davenport,* 70 Mo. 545. (5) But the record shows that all that was done by the justice was up to the standard required by counsel. (6) The execution is complete. It was not necessary that it show that the justice who rendered the judgment was an officer of the City of Kansas. *Perkins v. Quigley,* 62 Mo. 498 ; *Carpenter v. King,* 42 Mo. 223. (7) An execution sale is not open to attack for any defect in the execution which could have been amended. *Stewart v. Severance,* 43 Mo. 322 ; *Davis v. Kline,* 76 Mo. 313 ; Freeman on Executions, sec. 63 ; Herman on Executions, sec. 66. The same principle governs in cases of judgment for taxes. *Wellshear v. Kelly,* 69 Mo. 343. (8) It was not necessary for the sheriff to go upon the land to make the levy. *Duncan v. Matney,* 29 Mo 375.

Norton, C. J.—This is a suit by ejectment to recover the possession of certain real estate in Kansas City. Defendant had judgment, from which plaintiff has appealed, and it is conceded that plaintiff was entitled to recover unless a certain sheriff's deed, put in evidence by defendant, was effectual in passing the title to the property in dispute.

The trial court held that the deed was effectual for

that purpose, and it is this ruling of which plaintiff complains, and the grounds of his complaint will sufficiently appear by the following facts disclosed by the bill of exceptions, viz: That the following executions were delivered on the first day of April, 1876, to the sheriff of Jackson county, which, together with the advertisements posted thereon, were read in evidence. There are two of these executions, but inasmuch as, except as to the amounts thereof, the recitals in each are the same, we copy herein but one, which is as follows:

" The State of Missouri.

" To the Sheriff of Jackson County, Greeting:

" Whereas, Michael Hunt, on the twenty-second day of September, A. D., 1875, filed in the office of the clerk of the circuit court of Jackson county, a transcript of a judgment, by him obtained against Charles G. Hopkins, Sans W. Hopkins, and J. V. C. Karnes, before A. W. Allen, Esq., a justice of the peace, within and for Kaw township, Jackson county, on the twenty-sixth day of June, A. D., 1875, for the sum of $37.64, which to the said Michael Hunt was adjudged as aforesaid, and also for costs ; and, whereas, said judgment was rendered on a certain special tax bill against the following described real estate: Lot number nine (9) in block number seven (7) of Ranson and Hopkins' addition to the City of Kansas, county of Jackson, and state of Missouri, and that the defendants are the owners thereof.

" These, therefore, command you, that of the above described real estate of the said Charles G. Hopkins, Sans W. Hopkins, and J. V. C. Karnes, you cause to be made the sum aforesaid, adjudged against them, together with the costs, and that you have the same before the judge of our Jackson county circuit court at the next April term thereof, to satisfy the judgment and costs aforesaid ; and that you certify how you execute this writ.

"Witness, Wallace Laws, clerk of our said circuit court of Jackson county, with the seal thereof hereunto affixed, at office, in Kansas City, this first day of April, A. D., 1876.

[L. s.]                    ·· WALLACE LAWS,
                              "Clerk.

The following were the acts done by the sheriff under the executions, to-wit :   On the twenty-ninth day of April, 1876, the sheriff caused an advertisement to be inserted (as provided by law for advertising sheriff's sales under executions), of his intention to sell said real estate, under the executions above set forth, on the twenty-second day of May, 1876, and notice of such intention having been published,  said real estate was stricken off on May 22, 1876, and sold to Wm. E. Sheffield, at public sale, by the sheriff, at the courthouse door.   A deed, in due form of law, was made by the sheriff to Wm. E. Sheffield, purporting to convey to him said real estate, and vested in said Sheffield the title to said real estate, if the above executions were sufficient on their face to authorize the sheriff to proceed thereon to make a sale, and were living writs on the twenty-second day of May, 1876.   Said sheriff's deed is as follows :

"To all to whom these presents shall come, I, C. B. L. Boothe, Sheriff of Jackson County, State of Missouri, send greeting :

"Whereas, Michael Hunt, on the twenty-second day of September, A. D., 1875, filed in the office of the clerk of the circuit court of Jackson county, a transcript of a judgment, by him obtained against Charles G. Hopkins, Sans W. Hopkins, and J. V. C. Karnes, before A. W. Allen, Esq., a justice of the peace, within and for Kaw township, Jackson county, on the twenty-sixth day of June, A. D., 1875, for the sum of twenty-four and forty-nine hundredths dollars, which to the

said Michael Hunt was adjudged as aforesaid, and also for costs ; and, whereas, said judgment was rendere on a certain special tax bill against the following described real estate : 'Lot number nine (9), in block number seven (7), of Ranson & Hopkins' addition to the City of Kansas, county of Jackson, and state of Missouri,' and that the defendants are the owners thereof. These, therefore, command you that of the above described real estate of the said Charles G. Hopkins, Sans W. Hopkins, and J. V. C. Karnes, you cause to be made the sum aforesaid adjudged against them, together with the costs, and that you have the same before the judge of our Jackson county circuit court, at the next April term thereof, to satisfy the judgment and costs aforesaid, and that you certify how you execute this writ.

"Witness, Wallace Laws, clerk of our said circuit court of Jackson county, with the seal thereof hereunto affixed, at office, in Kansas City, this first day of April, A. D., 1876.

[L.S.]                          " WALLACE LAWS,
                                          " Clerk.

"And, whereas, Michael Hunt, on the twenty-second day of September, A. D., 1875, filed in the office of the clerk of the circuit court of Jackson county a transcript of a judgment, by him obtained against Charles G. Hopkins, Sans W. Hopkins, and J. V. C. Karnes, before A. W. Allen, Esq., a justice of the peace, within and for Kaw township, Jackson county, on the twenty-sixth day of June, A. D., 1875, for the sum of thirty-seven and sixty-four hundredths dollars, which to said Michael Hunt was adjudged as aforesaid, and also for costs ; and, whereas, said judgment was rendered on a certain special tax bill against the following described real estate : 'Lot number nine (9), in block number seven (7), of Ranson and Hopkins' addition to the City of Kansas, county of Jackson, and state of Missouri,' and that the defendants are the owners

thereof. "These, therefore, command you, that of the above described real estate of the said Charles G. Hopkins, Sans W. Hopkins, and J. V. C. Karnes, you cause to be made the sum aforesaid adjudged against them, together with the costs, and that you have the same before the judge of our Jackson county circuit court, at the next April term thereof, to satisfy the judgments and costs aforesaid, and that you certify how you execute this writ.

"Witness, Wallace Laws, clerk of our said circuit court of Jackson county, with the seal thereof hereunto affixed, at office, in Kansas City, this first day of April, A. D., 1876.

[L. S.] "WALLACE LAWS,
"Clerk."

"And whereas, Michael Hunt, on the twenty-second day of September, A. D. 1875, filed in the office of the clerk of the circuit court of Jackson county, a transcript of a judgment by him obtained against Charles G. Hopkins, Sans W. Hopkins, and J. V. C. Karnes, before A. W. Allen, Esq., a justice of the peace within and for Kaw township, Jackson county, on the twenty-sixth day of June, A. D. 1875, for the sum of $24.49, which to the said Michael Hunt was adjudged as aforesaid, and also for costs; and whereas, said judgment was rendered on a certain special tax bill against the following described real estate: Lot numbered eleven (11), in block numbered seven (7), of Ranson & Hopkins' addition to the City of Kansas, County of Jackson, and State of Missouri, and that the defendants are the owners thereof.

"These, therefore, command you, that of the above described real estate of the said Charles G. Hopkins, Sans W. Hopkins, and J. V. C. Karnes, you cause to be made the sum aforesaid adjudged against them, together with the costs, and that you have the same before the judge of our Jackson county circuit court, at the next

April term thereof, to satisfy the judgment and costs aforesaid, and that you certify how you execute this writ.

"Witness, Wallace Laws, clerk of our said circuit court of Jackson County, with the seal thereof hereunto affixed, at office, in Kansas City, this first day of April, A. D. 1876.

[L. S.]               "Wallace Laws,
                               " Clerk.

"And whereas, Michael Hunt, on the twenty-second day of September, A. D. 1875, filed in the office of the clerk of the circuit court of Jackson county, a transcript of a judgment by him obtained against Charles G. Hopkins, Sans W. Hopkins, and J. V. C. Karnes, before A. W. Allen, Esq., a justice of the peace within and for Kaw township, Jackson county, on the twenty-sixth day of June, A. D., 1875, for the sum of $37.64, which to the said Michael Hunt was adjudged as aforesaid, and also for costs; and whereas, said judgment was rendered on a certain special tax bill against the following described real estate: Lot numbered eleven (11), in block numbered seven (7), of Ranson & Hopkins' addition to the City of Kansas, County of Jackson, and State of Missouri; and that the defendants are the owners thereof.

"These are, therefore, to command you that of the above described real estate of the said Charles G. Hopkins, Sans W. Hopkins, and J. V. C. Karnes, you cause to be made the sum aforesaid adjudged against them, together with the costs, and that you have the same before the judge of our Jackson County circuit court, at the next April term thereof, to satisfy the judgment and costs aforesaid, and that you certify how you execute this writ.

" "Witness, Wallace Laws, clerk of our said circuit

court of Jackson County, with the seal thereof hereunto affixed, at office in Kansas City, this first day of April, A. D. 1876.

[L. S.]                    "Wallace Laws,
                                    "Clerk.

"And having previously to the day of sale hereinafter mentioned given at least twenty days' notice of the time, terms, and place of sale, and of the real estate to be sold, and where situated, as the law directs, by advertisements signed. by me as sheriff, as aforesaid, and published in the 'Kansas City Times,' an English newspaper, and in the 'Kansas Courier,' a newspaper printed in the German language, both said newspapers being printed and published regularly in Jackson County, State of Missouri, by virtue of which said executions and said notices I did on the twenty-second day of May, A. D. 1876, between the hours of nine o'clock in the forenoon and five in the afternoon of said day, in pursuance of said notices, at the courthouse door in the City of Kansas, in said county, and while said court was in session at the April term thereof, A. D., 1876, expose to sale at public auction to the highest bidder, for cash in hand, the above described real estate, and William E. Sheffield being the highest and best bidder for said real estate, at the price and sum of $187.33, the same was stricken off and sold to him for that sum. (That is to say, $93.82 for said lot nine in block seven, under the execution above described, and $93.51 for said lot eleven in block seven, under the two executions above described).

"Now, therefore, in consideration of the premises aforesaid, and of the said sum of $187.33 to me, the said sheriff, in hand paid by the said William E. Sheffield, the receipt whereof is hereby acknowledged, and by virtue of the authority in me vested by law, I, C. B. L. Boothe, sheriff as aforesaid, do hereby assign, transfer, and convey to him, the said William E. Sheffield, all of the above described real estate that I might sell as sheriff,

as aforesaid, by virtue of the aforesaid executions and said notices.

"To have and to hold the same unto him, the said William E. Sheffield, his heirs and assigns forever, with all the rights and appurtenances thereto belonging.

"In witness whereof, I, C. B. L. Boothe, sheriff of Jackson County, State of Missouri, have hereto set my hand and affixed my seal, this thirtieth day of June, A. D. 1876.

[L. s.]                              "C. B. L. Boothe,
                                              "Sheriff."

The two questions on the executions above set forth are all that is involved in the appeal to be taken herein. There was no levy of, or upon, either of the above executions, unless the advertisements aforesaid be deemed a levy. Each and all the acts of the sheriff, done on and under said executions, are above set forth, and were on the dates set forth.

The special executions, it was admitted, were issued upon special judgments rendered upon special tax bills, for the doing of certain grading in the City of Kansas, by a justice of the peace in said city. The transcripts of said judgments were filed in the office of the clerk of the circuit court of Jackson county, Missouri, at Kansas City, and there recorded and indexed as judgments of said court, prior to the issuing of said special executions. At the time of the rendition of said judgments, the title was in the defendants therein.

It is provided, in section 4, of the Kansas City charter (Acts 1875, p. 253), as follows: "When the amount due on any tax bill does not exceed three hundred dollars, suit may be brought thereon before the recorder of the city, or any justice of the peace in said city, as in other civil cases, and such recorder or justice of the peace may render a special judgment, as aforesaid, but, to enforce the same, a transcript of such judgment shall

be filed in the office of the clerk of the circuit court of Jackson county, in said city, * * * whereupon, an execution may be issued," etc.

It is insisted by plaintiff that said section of the charter confers jurisdiction, over the class of cases therein mentioned, only on justices of the peace in Kansas City, and that, inasmuch as the execution only recites that the justice who rendered the judgment was a justice of the peace of Kaw township, Jackson county, and omits the words, "in Kansas City;" that the execution, for want of that recital, conferred no power on the sheriff to make sale of the real estate in question. Conceding that the jurisdiction of courts of inferior and special jurisdiction to render a judgment must affirmatively appear, and that said section 4 only confers jurisdiction, over the class of cases referred to in it, on justices of the peace in Kansas City, it may be said that, if nothing further appeared than what appears on the face of the execution, the authorities cited by counsel tend strongly to establish his contention. But, in view of what has been held by this and other courts, that, although a jurisdictional fact may not appear either in the recitals of a judgment or execution, unless such recital is required to be made, if such jurisdictional fact does appear, from any of the proceedings had before the justice of such inferior court, it is sufficient. In view of this, and the admission made on the trial, that Allen, the justice of the peace who rendered the judgments on which the executions issued, was a justice of the peace in Kansas City, which we take to be an admission that such fact appeared from the proceedings had before him, we hold that the judgment is not subject to collateral attack, having been rendered by a court having jurisdiction both of the persons and subject-matter of the suit. *Gray v. Bowles*, 74 Mo. 419; *Stoddard v. Johnson*, 75 Ind. 30; *Iba v. Railroad*, 45 Mo. 469; *Haggard v. Railroad*, 63 Mo. 302; *Baker v. Baker*, 70 Mo.

136 ; *Jolly v. Foltz*, 34 Cal. 321 ; *VanDeusen v. Sweet*, 51 N. Y. 381 ; *Carpenter v. King*, 42 Mo. 219.

In the case last cited, it is held that a sheriff's deed which recites the date of the rendition of the judgment, the amount for which it was rendered, the names of the parties to the record, the time of fixing the transcript, and the time when execution issued, is sufficiently definite to render it *prima facie* evidence, and shift the burden of proof upon the adverse party, if he denies its validity, even although it does not recite the name of the justice of the peace before whom it was rendered.

It is next insisted that, inasmuch as the special executions came to the hands of the sheriff on the first day of April, 1875, returnable to the next April term, which began on the second Monday in April; and, inasmuch as nothing was done by the sheriff under them till the twenty-eighth day of April, 1876, when the property was advertised for sale, that the sale made under them, though made at said April term, was a void sale. In other words, it is contended that, by reason of the fact that nothing was done under the writs until after the first day of the April term, they became dead.

While counsel contend, and it may be conceded to be so, that the first day of the term to which a writ of execution is made returnable is the return day, it is, at the same time, admitted by him, and has been so ruled by this court, that where a general execution has been levied by the sheriff on the property of the defendant, anterior to the return day, that the property so levied upon may be sold at any time after the return day, provided it is sold during the term. If the levy of a general execution, which is but a seizure or designation, by the sheriff, of so much of the property of the defendant in the execution as is intended to be applied, by a sale, to the liquidation of the judgment debt, has the effect of imparting vitality to the execution, for the purposes of advertisement and sale of the property so seized, at

any time during the term, the like result would logic-ally follow in the case of a special execution, when the property to be sold for the payment of the judgment has been seized, set apart, and designated by the judgment of the court, and we so hold. In both cases, the prop-erty is in the grasp of the law, for the purposes of a sale, in one case, by the levy of the sheriff ; in the other, by the judgment of the court.

Judgment affirmed. All the judges concur.